# EXHIBIT A

1

1      UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF FLORIDA
2         MIAMI DIVISION
      CASE NO.  07-22948-CIV-KING

3

4

5  SETAI GROUP, LLC,

6          Plaintiff.        COPY

7     vs.

8                     Miami,  Florida
                     April 1, 2008
9  5TH AVENUE PARTNERS, LLC,    9:35-10:35 A.M.
  STEVEN REBEIL, THOMAS BENJAMIN,
10  TARA SOLOMON, INC.  D/B/A TARA, INC.
  YAMI ALVARADO, ELLIOT STARES AND
11  NICK D'ANNUNZIO,

12

13         Defendants.

14  _____

15

16

17       TRANSCRIPT OF DEFENDANTS' MOTION TO
        DISMISS FOR LACK OF JURISDICTION
18    BEFORE THE HONORABLE JAMES LAWRENCE KING
        UNITED STATES DISTRICT JUDGE

19

20

21

22

23  REPORTED BY:    DAWN M. WHITMARSH, RPR
             Official Court Reporter
24           301 N. Miami Avenue
             Room 340
25           Miami, Florida  33128
             Telephone:  305-523-5598

1    APPEARANCES:

2    FOR THE PLAINTIFF:

3                    *Russomanno & Borrello*
                    BY:  Herman J. Russomanno, Esq.
                    BY:  Robert J. Borrello, Esq.
4                   Museum Tower
                    Penthouse 2800
5                   150 West Flagler Street
                    Miami, Florida 33130
6                   305-373-2101

7                    *The Burton Firm*
                    BY:  Richard J. Burton, Esq.
8                   2999 Northeast 191st Street
                    Suite 805
9                   Miami, Florida 33180
                    305-705-0888

10

11   FOR THE DEFENDANTS:

12                   *JonesDay*
                    BY:  THOMAS R. MALCOLM, ESQ.
13                  3 Park Plaza
                    Suite 1100
14                  Irvine, California 92614-8505
                    949-851-3939

15                   *Coffey Burlington*
16                  BY:  KENDALL COFFEY, ESQ.
                    2699 South Bayshore Drive
17                  Penthouse
                    Miami,  Florida 33133
18                  305-858-2900

19                   *Astigarraga Davis*
                    BY:  ANNETTE ESCOBAR, ESQ.
20                  BY:  AVA BORRASSO, ESQ.
                    701 Brickell Avenue
21                  16th Floor
                    Miami, Florida 33131-2847
22                  305-372-8282

23

24

25

Setai Group, LLC vs. 5th Avenue Partners, et al

EXHIBIT A PAGE 18

```
 1                    P-R-O-C-E-E-D-I-N-G-S
 2        THE COURT:  Thank you.  Be seated please.  We're here this
 3   morning on several motions to dismiss the indictment in the
 4   case of Setai Group, LLC versus 5th Avenue Partners;
 5   Mr. Rebeil, Mr. Benjamin, Tara Solomon, Inc, Mr. Alvarado,
 6   Mr. Stares, Mr. D'Annunzio.
 7        May I have your appearances please for the Plaintiff?
 8        MR. RUSSOMANNO:  May it please the Court, good morning,
 9   Your Honor.  Herman Russomanno, Robert Borrello and Richard
10   Burton on behalf of the Plaintiff, The Setai Group, LLC.
11        THE COURT:  Thank you.  For the Defendants?
12        MR. MALCOLM:  Good morning, Your Honor.  My name is Tom
13   Malcolm, I'm with the law firm of JonesDay.  I represent the
14   5th Avenue Partners and Messrs. Rebeil and Benjamin.  I'm here
15   with my associate counsel, Mr. Kendall Coffey.
16        THE COURT:  Thank you, Mr. Malcolm, Mr. Coffey.
17        MS. ESCOBAR:  Good morning, Your Honor.  Annette Escobar
18   and Ava Borrasso from the firm of Astigarraga Davis on behalf
19   of Tara, Inc, and Yami Alvarado.
20        THE COURT:  Thank you, Ms. Escobar.  All right.  All
21   right.
22        We have the -- let's see, we have a pending motion to
23   dismiss the complaint that was filed on November 26 and another
24   motion by a different defendant filed on, let's see,
25   defendant's motion to dismiss filed -- can't be right.  11/26.
```

1    In any event, we have two motions to dismiss.  We have an

2    emergency motion for preliminary injunction which is not

3    scheduled for hearing this morning, and we have a request for

4    an expedited hearing on the motion for preliminary injunction.

5    So we're here this morning on the motions to dismiss.

6    For your information, I reviewed, read the motions and the

7    -- and some of the exhibits, not all of the exhibits, some of

8    the exhibit that have been appended to them and I'm generally

9    familiar with your positions, I think, or I believe, and I

10    relate that only for the purpose so that you'll know that I

11    have -- that you may not have to go in to as much detail about

12    the background as you otherwise might have, but I'll leave that

13    up to you.

14    So at this point, Mr. Malcolm, we'll hear from you and in

15    a moment from Ms. Escobar on the motions to dismiss.

16    Yes, sir.

17    MR. MALCOLM:  Thank you very much, Judge King.

18    Your Honor, you have reviewed the papers and therefore I

19    will not go into too much detail.

20    As you know from the evidence that we presented, contacts

21    between my clients, 5th Avenue Partners, Messrs. Rebeil and

22    Benjamin and the State of Florida are practically nonexistent.

23    The contract in question was not negotiated in this state.  The

24    contract was not executed here.  In fact, it was executed by

25    the plaintiff Setai at their headquarters in the Chrysler

Setai Group, LLC vs. 5th Avenue Partners, et al

1    Building in New York City.  It was executed by my client, 5th

2    Avenue Partners, in the Southern District of California.

3        The contract, as you know, Your Honor, calls for

4    performance exclusively in the western United States and

5    primarily the State of California.  The contract calls for no

6    performance of any nature whatsoever in Florida.

7        As a result of those foregoing facts, it's not surprising,

8    Your Honor, that the parties negotiated a choice of law to be

9    California and a forum selection clause where all disputes

10    relating to the contract would be adjudicated in the State of

11    California.

12        An argument has been made that that forum selection clause

13    has expired of its own terms.  We set forth, Your Honor,

14    sufficient authority and maintain that a forum selection clause

15    survives a contract even if it's been terminated.  We contend

16    vigorously this contract was not terminated.

17        Any conduct or alleged actions amounting to so-called

18    trademark infringement turn on the issuance of certain press

19    releases.  My clients did not direct that these press releases

20    be issued in the State of Florida.  These press releases were

21    not issued in the State of Florida.  The trademark in question

22    could not have been impacted in the State of Florida because

23    nobody in the State of Florida read those press releases.  Ms.

24    Escobar will be more eloquent on this point than I am because

25    she represents the client.

1    As you will learn from her, Tara, the public relations
2    firm, has a California presence and they wanted to expand that
3    presence primarily in the San Diego marketplace where my
4    clients, 5th Avenue Partners, conduct their primary business.
5        In an effort to enhance the relationship, they reached out
6    and they and made contact with 5th Avenue Partners.  All
7    contacts between my clients on the one hand, the public
8    relations firm with Tara, occurred between their Los Angeles
9    office in California and my clients in California.
10        Ms. Escobar, again, will explain to you that there's not a
11    shred of evidence that Tara is anything other than an
12    independent contractor as opposed to an agent. There's been no
13    credible evidence presented to you, Your Honor, that
14    demonstrates that there's an agency relationship here.  At a
15    very minimum, the limited business that my clients did with
16    Tara amounted to an independent contractual relationship.
17        I submit, Your Honor, that the evidentiary showing by the
18    Plaintiffs is anemic at best and wholly inadequate.
19    THE COURT:  Well, we're not, of course, dealing with that
20    at this point.  You see, we're dealing only with the issue of,
21    you know, whether or not there's personal jurisdiction and/or
22    whether the venue is proper here, and the evidentiary aspect of
23    it we have to take all the well-pled pleadings as true and
24    accurate.
25        So those matters of affidavits and all that business have

1    very little or no relevancy at this point in your argument.  Up

2    until now, everything is pertinent to the motion to dismiss.

3        Of course the Plaintiffs take issue with the fact that the

4    press releases were released in California.  I understand you

5    have a difference of opinion on that.  That's a factual issue I

6    suppose, but as I say, all we're dealing with here now are the

7    pleadings at this point, not the -- not any factual disputes.

8        Now, that would be highly relevant, of course, at the

9    preliminary injunction stage should we get that far.  But at

10   this point in time we're dealing with these issues that the

11   Plaintiff has alleged in the complaint that your client came to

12   Miami Beach, sought them out, wanted to enter into a business

13   relationship, visited a Setai facility or a hotel, condominium

14   or something, a large building here in Florida.  Those are the

15   allegations well-pled at this point in time indicating that the

16   defendant -- indicating the contacts with Florida that would

17   render this proper venue-wise and personal jurisdiction-wise.

18       But I don't think we need to bother ourselves at this

19   point with your respective positions regarding whether or not

20   factually something occurred.  I didn't mean to interrupt you.

21       MR. MALCOLM:  No, Your Honor, I appreciate you setting me

22   straight on that point and i will direct my arguments

23   accordingly.

24       My clients did not come to Florida to meet with the

25   principals of Setai.

1    THE COURT:  Okay.

2    MR. MALCOLM:  The -- if you look closely at the --

3    THE COURT:  Your client being 5th Avenue.

4    MR. MALCOLM:  5th Avenue and Mr. Rebeil --

5    THE COURT:  It's not as president or any authorized

6    principal.  I'm interpreting your argument.

7    MR. MALCOLM:  That's correct, Your Honor.  Both Rebeil and

8    Benjamin are the principals of 5th Avenue.  They did not come

9    to Florida.  The dealings were between the principals in

10   California and the negotiations of the contract.

11   Mr. Breene, in his declaration as you'll note, never

12   advised specifically any of my clients, rebeil or Benjamin,

13   came to Florida.  It's simply not the case.  They haven't been

14   here before the contract was signed in connection with this

15   matter or after the contract was signed.

16   THE COURT:  Is that a matter, in your judgment, of factual

17   issue that would have to be determined on discovery and so on.

18   MR. MALCOLM:  No, Your Honor, for the reason that

19   Mr. Breene in his declaration does not say that my clients came

20   to Florida.  He says that the defendants visited Setai.  That's

21   very general.  The defendants encompass employees of Tara, Inc,

22   some of them are residents of Miami.  That's a very salient

23   point.

24   THE COURT:  Who is Mr. Breene.

25   MR. MALCOLM:  Mr. Breene is the only declarant -- he's one

1  of the two principals --

2      THE COURT:  Of the Plaintiff?

3      MR. MALCOLM:  Of the Plaintiff.

4      THE COURT:  Okay.  Thank you, all right.  So you're

5  talking about his declaration and his affidavit.  How about the

6  complaint?  Is he in the complaint?  Don't they say that they

7  negotiated this here in --

8      MR. MALCOLM:  No, Your Honor, they don't.  They can't say

9  that because it's not the case.

10     THE COURT:  Okay.

11     MR. MALCOLM:  The only tort that they allege that was

12 committed here is fraud in the inducement; the argument being

13 --

14     THE COURT:  And the press release.

15     MR. MALCOLM:  No, this is a separate -- there are two

16 arguable torts.

17     THE COURT:  That's right.  There's two torts.  You said

18 "the only thing" and I said "and the other one".  I didn't mean

19 to take away from your first one, but the Plaintiff says two

20 things happened here.

21     MR. MALCOLM:  Right.

22     THE COURT:  And one was the arguable tort is the fraud

23 that is alleged to have been committed by one or more of the

24 principals, and I don't know which ones at this point, and

25 secondly the press release.  Those are the things they rely on

Setai Group, LLC vs. 5th Avenue Partners, et al

EXHIBIT A PAGE 25

1  and you have to deal with both of them.

2      MR. MALCOLM:  Exactly.

3      THE COURT:  Yeah.

4      MR. MALCOLM:  And taking the fraud in the inducement

5  initially, that occurred, obviously, before the contract was --

6  if it occurred, and we dispute it did not occur, it was

7  executed on May 27.  The fraud in the inducement could not have

8  taken place in Florida because that's not where the contract

9  was executed or negotiated.

10      The argument is is that one of my principals made a

11  material omission and/or concealment and that fact, if it

12  exists, had to have arguably induced them to enter, Setai

13  Group, enter the contract.  That did not occur in Florida.

14      The press releases themselves on their face demonstrate

15  that they were issued in San Diego to the San Diego media.  So

16  to the extent that there's been any infringing activity, as Ms.

17  Escobar will attest, it occurred in San Diego, California where

18  we have an existing lawsuit in the Southern District court.

19      So in addition to asking you to dismiss this case for want

20  of personal jurisdiction or to transfer for improper venue, we

21  submit that Setai is going to have to be -- is going to be

22  involved in that lawsuit anyway.  So whether the Court decides

23  in the interest of judicial economy to dismiss this case or

24  transfer this case, it's within your power.

25      An argument was made that there were certain phone calls

```
 1   that were made between the parties after the contract was
 2   signed.  Case after case that the Plaintiff cited demonstrate
 3   that phone calls alone are not sufficient to give rise to
 4   personal jurisdiction to satisfy the due process clause.
 5        So in summation, Your Honor, under the principles of due
 6   process, and the notions of fair play and substantial justice,
 7   we submit that the clients, my clients, have not purposely
 8   availed themselves of the laws of the State of Florida, nor
 9   could they reasonably be expected to be hailed into court here.
10   Therefore, we would urge you to either transfer the case on the
11   basis of the forum selection clause for improper venue or we
12   ask that you dismiss it for want of personal jurisdiction.
13        Thank you, Judge King.
14        THE COURT:  Thank you, Mr. Malcolm.
15        Ms. Escobar?
16        MS. ESCOBAR:  Good morning, Your Honor.
17        THE COURT:  Good morning.
18        MS. ESCOBAR:  Our clients, Tara Inc. and Ms. Alvarado
19   joined in the 5th Avenue defendant's motion to dismiss for
20   improper venue to the extent that venue is not proper in the
21   venue pursuant to 1391.
22        As we pointed out repeatedly in our papers, Your Honor, we
23   believe this case is primarily between the 5th Avenue
24   Defendants and the Plaintiffs and we are nothing more than an
25   advertising agency, a public relations agency, that was issuing
```

1    advertisements for our client, at their direction, the 5th

2    Avenue defendants.

3         The filing of this action here in the southern district,

4    Your Honor, we believe is the tail wagging the dog.  The

5    Florida connection here is fabricated.  There is nothing here

6    in Florida.

7         Under 1391, Your Honor, the relevant venue statute, the

8    showing that must be made is a substantial part of the events

9    or omissions giving rise to the cause of action occurred in the

10   venue where venue is proper.

11        As pertains to our client, Your Honor, the only claim made

12   against us is for violation of the Lanam Act.  If you read the

13   very language used by Plaintiff in its complaint, its complaint

14   against us arising out of the press releases is that the

15   unauthorized publication of the Setai name in three separate

16   press releases marketing the Setai San Diego project.

17        And Your Honor, if you look at the press releases attached

18   to the Plaintiff's complaint, it is evidence on the face of

19   those press releases that they were issued exclusively in

20   California, to California residents for --

21        THE COURT:  How can you tell to California residents?  I

22   do recall reading them, Exhibits 5 and 6 I believe they are, 7

23   perhaps, and they're bylined -- the byline on them would

24   indicate -- what did I do with those?  Here they are.  Would

25   indicate they were issued in, let's see here, here it is, San

Setai Group, LLC vs. 5th Avenue Partners, et al

EXHIBIT A  PAGE 28

1   Diego, yes.  On Exhibit 5 and Exhibit 6.

2        But what makes -- on what basis can you argue that they

3   would only be read by San Diegans or however you pronounce it?

4   I mean, once you throw it out there in the press, it's not

5   unusual.

6        Something I did last week that a judge, a friend of mine

7   in -- former law clerk from Washington sent me a little copy of

8   something about one of my cases last week.  Who would think

9   anybody would be interesting in seeing it printed out there.

10  But that happens.

11       So I don't mean to quarrel with you on this, but it was

12  issued, it shows that it was issued there.

13       Now, I presume since injunctive relief was one of the

14  principal things the Plaintiffs are seeking, that it would be

15  or someone felt and believed that it was necessary to include

16  your client in that to make sure that it stopped.  That is, any

17  alleged trademark infringement stopped.

18       And so I would -- I don't have much difficulty with the

19  concept that your client is simply embroiled in this thing, in

20  this dispute between two other groups of people, 5th Avenue and

21  Setai, but I don't -- I presume they would be -- there's a

22  reasonable basis for them being here, to stop any alleged, if

23  it be established, any alleged violation of the trademark laws.

24  That's what we're getting at.

25       So your proposition is that you were following the

1    instructions of your client, 5th Avenue, and you published what

2    they told to you publish and you did it.

3        MS. ESCOBAR:  Correct.

4        THE COURT:  Now, there is a dispute about whether the

5    press release emanated from Miami or from San Diego.  That is

6    to say the allegations of the complaint seemed to indicate that

7    you have an office here, your client has an office here and

8    that it emanated here, was drafted here, issued from here and

9    sent to California.  What's your position with respect to that?

10       MS. ESCOBAR:  Our position with that, Your Honor, is that

11   whether they were created here or whether we contacted the

12   media from here, the fact of the matter is that the mark was

13   allegedly -- the alleged unauthorized use of the mark was

14   exclusively in San Diego to the extent that it wasn't

15   disseminated through the internet to other means.

16       THE COURT:  How do we know that from the complaint now?

17   See, how do we know -- the complaint says that -- and I keep

18   saying the complaint, I've been reading the briefs of the

19   parties so I may be misspeaking here.  I don't mean to do that.

20       But the briefs of the parties say that the news release

21   came out of Miami, Florida, drafted here, sent out there, that

22   you're operating under instructions of your client and you did

23   that.

24       But I don't think when you sent it out that you -- I don't

25   think it was anybody's intent that it be limited to just the

1    San Diego County or whatever it was.  You probably hoped that

2    it would get picked up and printed in England.  You're in the

3    public relation business.  Surely you didn't tell anybody to

4    just sent this to San Diego.

5        MS. ESCOBAR:  No, but it was primarily aimed at

6    California.  And again I direct Your Honor to --

7        THE COURT:  How do we know that.  What do you base your

8    argument on.  That's all I'm saying.  The byline?

9        MR. MALCOLM:  The byline of the press releases say San

10   Diego, the hotel that we were -- that the press release is

11   related to was in California.  And we were looking to influence

12   the residents of California that would be most likely to --

13       THE COURT:  And you said nothing in there about the

14   international reputation about Setai Group and the worldwide

15   rep and the great brand and all that?  Of course you did.

16       MS. ESCOBAR:  It did say something about great brand, but

17   two things, Your Honor.

18       THE COURT:  So you didn't intend for that to influence

19   anybody in California, right?

20       MS. ESCOBAR:  We intended, as you said, for it to

21   influence the people in California.

22       THE COURT:  Okay.  Fine.

23       MS. ESCOBAR:  But two points, Your Honor, that I would

24   like to point out to you.

25       Paragraph 36 of the complaint against, again, of the

1    trademark infringement claim, it says unauthorized publication.

2    The publication actually occurred in California.

3        And the other thing I would like to point to Your Honor's

4    attention is the case of Copeman Transmission Systems versus

5    Martino, which is cited by the Plaintiff itself, 36, F3rd, 291.

6    In that case, the court held that notwithstanding that the --

7    in relevant part that the advertisement had been created in

8    Pennsylvania, that because the trademark was used in Michigan,

9    and that that was the nature of the trademark infringement

10   claim, that in fact the proper venue was Michigan, and on that

11   basis they dismissed for improper venue to Michigan.

12       And on the foregoing bases, unless your client -- unless

13   Your Honor has any further questions, we would request the

14   court to dismiss this action for improper venue on the basis of

15   1391.

16       THE COURT:  Thank you.  For the Plaintiff.

17       MR. RUSSOMANNO:  May it please the court, Herman

18   Russomanno, Your Honor.

19       We respectfully submit, Your Honor, that the motions to

20   dismiss should be denied and that this case properly belongs in

21   this district before Your Honor.

22       It's apparent, Your Honor, that you have great command of

23   the facts of this case from the questions you've asked and the

24   information given.  So let me just touch upon a few of the

25   comments that had been mentioned.

Setai Group, LLC vs. 5th Avenue Partners, et al

1      If I could please start with, say, the Tara defendants,

2   even by their own submissions, Your Honor, and I believe you

3   pointed it out, their own press release, if you talk about

4   their media contact, lists a 305 number.  Everyone knows that's

5   here in Dade County.  The e-mail addresses are here, the hotel

6   Setai, its brand and reputation is on the beach here in Miami,

7   and really all of the defendants of that defendant reside here.

8      Interestingly, Your Honor, they didn't submit any

9   affidavit, and the burden is upon them to deny, and at the

10  minimum, and I know we're not getting into factual

11  discrepancies, but we've pled, and Your Honor even pointed it

12  out without having the first complaint in front of you.  We've

13  talked, Your Honor, on page five of this first amended

14  complaint, seeking injunctive relief and declaratory judgment,

15  that the defendants here developed this brand manifested in the

16  Setai on Miami Beach, visited Miami Beach to review the design

17  style and decor of the Setai brand, sent its designers and

18  others to review the Setai brand of Miami Beach.  Met with

19  executives and principals of the Setai on Miami Beach,

20  regularly communicated with the principals of Setai who live

21  and reside in Miami Beach, then we went on also talking about

22  the physical manifestations of the Setai's brand in Miami

23  Beach.  We talk about the tortuous acts and the contacts under

24  Florida Statute 49 -- 48.193(1)(b).

25     Moreover, we talked about that the defendants had

**Setai Group, LLC vs. 5th Avenue Partners, et al**

1   conducted business in the State of Florida by publishing these

2   press releases in Miami, Dade County, Florida, containing the

3   Setai registered trade name.

4        We talked about, you know, that personal jurisdiction is

5   proper, that the Defendants 5th Avenue, Rebeil and Benjamin

6   hired Tara, a public relations firm, you know, which is located

7   here in Miami, Florida, Your Honor.

8        So I think Your Honor properly pointed out that the

9   complaint, the first complaint in and of itself states many

10  factors to show why jurisdiction is proper here and that the

11  Setai Group, which is not part of the letter of intent, that

12  Your Honor, I think we've sufficiently set forth as it relates

13  to that defendant why this case belongs in this district.

14       If I could for a moment, I know counsel for the 5th

15  Defendants indicated with regard to the letter of intent.   One

16  think thing to point out, Your Honor, is that the forum

17  selection clause, our letter of intent that was entered into

18  May 23rd, we contend, Your Honor, is unenforceable.   And why do

19  we say that.   It's the Setai Group's position, Your Honor, that

20  the forum selection clause in the letter of intent expired and

21  thus became ineffective by its own terms at the end of the 90

22  day negotiation period, August 21, 2007.

23       And it's important and significant, Your Honor, that when we

24  talk about this being unenforceable, that Paragraph 20, which

25  is attached as Exhibit A to this letter of intent, it clearly

**Setai Group, LLC vs. 5th Avenue Partners, et al**

EXHIBIT A   PAGE 34

1    sets forth, and reading in pertinent part, Your Honor, when

2    they talk about the legal structure, it indicates the

3    following: It talks about to be mutually agreed upon by the

4    members during the negotiations period, the governing law, the

5    jurisdiction and venue would be agreed to during the

6    negotiation period.

7         We respectfully submit, Your Honor, that never occurred.

8    And that there was no agreement reached between the parties

9    during the 90 day period, and that the venue clause therefore

10   is unenforceable.

11        The cases cited by the Defendants, one of which Supreme

12   Court case, supports our position.  There's another case

13   dealing with an arbitration provision which we believe, you

14   know, is not pertinent here.

15        So if you really look at the paragraph, Your Honor, we

16   know you've reviewed everything with regard to the exhibits,

17   that in fact, Judge, it didn't occur.  And that properly we

18   belong in this district.

19        As it relates to, Judge, the minimum contacts, and I'd

20   like to turn to that for a moment with Your Honor's permission,

21   we have set forth, Judge, as to why we believe there are

22   sufficient minimum contacts and jurisdiction here in Miami,

23   Florida, in the Southern District.

24        If you just look to the Exhibit A, which sets forth -- and

25   we just cited 15, if we talk for a moment about Tara, the

**Setai Group, LLC vs. 5th Avenue Partners, et al**

EXHIBIT  A  PAGE 35

1    Defendant Tara, it's undisputed, Your Honor, that Tara was

2    hired by the Defendants to serve as its public relations firm,

3    agent, and, Your Honor, they're Miami based.  They conduct

4    their business in Miami Beach.  Here.  They issued the press

5    release and we submit, Your Honor, that these are subject of

6    Setai's claims from Miami.  And as its pointed out, once

7    something is released, Your Honor, it's difficult for anybody

8    to control its dissemination.  In the electronic age, once

9    something whether -- it's on the internet, once something is

10   electronically disseminated, as Your Honor points out, it

11   travels every place.  It's not even confined to this country.

12   In this case, its implications, Your Honor, even extend outside

13   the borders of this country.

14        It also shows, Your Honor, that Tara, Inc, that their

15   employees, whether it's Yami Alvarado, Elliot Stares, Nick

16   D'Annunzio, and people that were involved in the issuance of

17   this press release, they reside in Miami, they're residents

18   here of Florida.  That these individuals were authorized by the

19   5th Avenue Defendants, and quoting Mr. Benjamin in a press

20   release issued in Miami as stating, "we are introducing an

21   unprecedented level of five-star services and design to the

22   west coast".  But they're talking about emanating from the

23   east.  "By the way of the Setai's Miami's renowned reputation

24   in the luxury hospitality industry, the Setai San Diego will

25   sustain a consistent and unparalleled high level of luxury and"

1  -- you know, but all emanating here.

2      And as it goes on, Your Honor, they acknowledge that it's

3  the prototype of the Setai brand here in Miami Beach.  And we

4  have if Your Honor, and I believe we submitted them, you know,

5  pictures of this design of what this hotel looks like and the

6  importance of this brand and why it's so important to my

7  clients.

8      The 5th Avenue Defendants, Your Honor, directed its design

9  consultants and team, the Rockwell Group, to travel to the

10  Setai in Miami Beach in August of 2007 to review the design,

11  the standards of the Setai.  To look at the brand product,

12  subject to the above action and to meet in Miami with

13  principals and employees of Setai.

14      Furthermore, the 5th Avenue Defendants caused a Mr. Craig

15  Waterman to travel to Setai in Miami Beach in late August and

16  in early September to meet -- to interview with the principals

17  of Setai for purposes of hiring a general manager and director

18  in furtherance of this proposed business relationship.

19      The 5th Avenue Defendants caused Grace Duncan to travel to

20  the Setai in Miami Beach during that same period of time to

21  meet and to interview with the principals of Setai based here

22  in Miami.

23      That the 5th Avenue Defendants engaged in weekly

24  conference calls with principals and employees of Setai.  And

25  this isn't limited just, Your Honor, to telephone calls.  We're

1  talking about continual, continual contact with this

2  jurisdiction.  And we respectfully submit, Your Honor, that it

3  satisfies the minimum contacts.

4      The Defendants' jurisdictional and venue arguments, we

5  submit Your Honor, ignores the fact that the heart of the case

6  is the Setai brand. The brand the luxury condominium hotel

7  manifests and exists only here in Miami Beach, Florida.  And

8  you can see from even Mr. Rebeil's declaration at Paragraph 17

9  and 18, he admits that the 5th Avenue sought the Setai brand.

10      These defendants entered into a business relationship with

11  Setai in order to develop that brand here.  They visited the

12  beach, they did all of that and so forth and we've set forth

13  that.

14      We've set forth in our amended complaint, the first one,

15  Your Honor, that they engaged this firm here which is located

16  here.  And it went on and on, Your Honor.  And that the press

17  release, we submit, that the burden is on them and yet, Your

18  Honor, and again, respectfully, Tara sits back and they're

19  silent.  They're silent with regard to coming in and just

20  denying out right, meaning if what we've alleged is not true,

21  and we submit to the Court it is and for purposes at this

22  stage, as Your Honor properly pointed out, it's the position

23  that the pleadings would be assumed as true, that we've

24  indicated that Your Honor, and that their silence, I think, is

25  key to show that we're correct on this issue.

**Setai Group, LLC vs. 5th Avenue Partners, et al**

1    And Your Honor, with regard to all of that, what we've

2    talked about, even -- and again, I think there was a mention

3    made of the case out -- we had filed, and I think it's

4    undisputed, Your Honor, that on November the 14th of 2007, and

5    if we even look at what Your Honor is familiar with, the first

6    to file doctrine, that we filed this on November 14th of '07.

7    Clearly the Defendants filed an action later on.  And in the

8    11th Circuit, Your Honor, that the first file rule provides

9    that when two actions with overlapping issues and parties are

10   pending in different courts, the court of the later-filed

11   action should defer to the court where the case was first filed

12   by dismissing, staying or transferring the later-filed suit.

13   And a case that cites that proposition is Manuel versus

14   Converse Corp, 430, Federal Third, 1132, a 2005 11th Circuit

15   case.

16   And Your Honor, we just submit, based upon what we've

17   heard, what the papers are submitted, that, Your Honor, that

18   these motions should be denied, that the case properly belongs

19   before Your Honor, that it should remain in this district.

20   Thank you, Your Honor.

21   THE COURT:  All right.  Thank you.

22   Mr. Malcolm or Mrs. Escobar, anything in brief rebuttal?

23   Mr. Malcolm.

24   MR. MALCOLM:  Thank you, Your Honor.

25   With respect to the forum selection clause, the clause

**Setai Group, LLC vs. 5th Avenue Partners, et al**

EXHIBIT A PAGE 39

1    remains viable.  The argument that somehow it expired is a make

2    wick argument.  If you look at the contract itself, you'll see

3    that the 90-day period does not pertain to the main contract,

4    but is just a window of opportunity to negotiate for definitive

5    agreements which never took place because in the course of

6    those negotiations, the Setai Group repudiated the contract.

7    So they can't, by their own breach, somehow benefit by arguing

8    that there has been an expiration.

9        As we set forth in our papers, the law is clear that when

10   the parties bargained for a forum selection clause, the only

11   value of that clause is for it to remain available to the

12   parties in the event there is future conduct which needs to be

13   resolved related to the agreement, which is what happened here.

14       With all due respect to counsel, he makes a lot of

15   elaborate statements that my clients visited Florida.  They did

16   not visit Florida, nor does his client, in declaration form,

17   indicate that my clients visited Florida.  They did not.

18       He makes allegations that my clients somehow engaged Tara

19   in Miami Beach.  That is not the case.  As I indicated to you

20   in my opening argument, Tara has an office in California.  It

21   was doing business in San Diego.  It solicited my clients.  All

22   of my clients' dealings with Tara were in San Diego.

23       THE COURT:  That's a pretty clear issue of fact, isn't it?

24       MR. MALCOLM:  It's clear, Your Honor, because --

25       THE COURT:  You allege that you did and you're arguing

Setai Group, LLC vs. 5th Avenue Partners, et al

EXHIBIT A  PAGE 40

1    that they didn't.  But it's an issue of fact.

2         MR. MALCOLM:  Well, the reason why I think it's not in

3    dispute is because we have submitted to you irrefutable

4    evidence in declaration form that that's what's happened.

5         THE COURT:  Which are facts.

6         MR. MALCOLM:  Correct, but there's been no --

7         THE COURT:  I can't get us back on the track that we have

8    to take the well-pled allegations as true.  So we've got, under

9    the best of circumstances from your client, an issue of fact.

10   Your client says they came and solicited us; the Plaintiff has

11   pled that your clients came and solicited them.  That's an

12   issue of fact.

13        MR. MALCOLM:  Judge, in our motion to dismiss, we cited

14   you authority to the effect that affidavits and declaration

15   testimony trump allegations and complaints.  We submitted a

16   declaration under oath to the effect that we never had any

17   deals whatsoever with Tara in Miami Beach.  That has not been

18   refuted by a contrary declaration.

19        So with all due respect, Your Honor, that issue should be

20   irrefutable.

21        THE COURT:  Not subject to proof at a preliminary

22   injunction or anything like that.  Just --

23        MR. MALCOLM:  Well, Your Honor, they had an opportunity to

24   submit a declaration to the effect that that was not the case.

25   They didn't do so.

Setai Group, LLC vs. 5th Avenue Partners, et al

1    I'm frankly mystified why a New York based company that

2 signed this contract in the Chrysler Building, who does not

3 have a legal ownership of the Setai Hotel in Miami Beach, and

4 that has not been refuted, they don't own this, they have --

5 the advantage of having -- one of their principals happens to

6 have a residence here and they have a satellite office here,

7 but I'm frankly mystified why they would not file in the

8 Southern District of California where all the performance is

9 called for, all the witnesses are.

10    THE COURT:  Or New York and nobody has argued that.

11    MR. MALCOLM:  You're right, Your Honor.  Or New York.

12 You're right on.  Or New York.

13    THE COURT:  But nobody has argued that.

14    MR. MALCOLM:  Nobody's argued that.

15    THE COURT:  All you're saying is here or California so

16 there's the problem I've got.

17    MR. MALCOLM:  So Your Honor, the -- I guess the case cited

18 by Tara's counsel, I think, should be dispositive.  The conduct

19 involving so-called infringement did not take place in Florida,

20 it took place in California.

21    THE COURT:  The violation of the trademark.

22    MR. MALCOLM:  Correct, Your Honor.  It took place in

23 California.  And as a consequence, venue consistent with the

24 forum selection clause should be in California.

25    THE COURT:  Okay.

1    MR. MALCOLM:  And you know, Your Honor, if there was some

2    credible evidence which demonstrated that my client directed

3    Tara from its Miami-based operations, that would be one thing.

4    But there's not any such evidence before you.

5        So I submit under the principles of due process, there's

6    certainly no personal jurisdiction here, and I submit further

7    that under the forum selection clause, this case should be

8    transferred or dismissed.

9        THE COURT:  Thank you, Mr. Malcolm.

10       MR. MALCOLM:  Thank you, Your Honor.

11       THE COURT:  Ms. Escobar, anything further that you --

12       MS. ESCOBAR:  Your Honor, a few minor points.

13       Plaintiff's counsel would like you to focus on contacts

14   that Tara supposedly has with Florida and conduct that Tara had

15   with Florida unrelated to the trademark infringement action.

16   But I would like to point you to a specific provision of the

17   case I cited before, the Copeman case in which the case

18   specifically says "the test for determining venue is not the

19   defendant's contacts with the particular district, but rather

20   the location of those events or omissions giving rise to the

21   claim".

22       And Your Honor, we would submit, once again, that those

23   events and omissions that gave rise to the claim for trademark

24   infringement, again the only claim against our clients was in

25   San Diego, related to a San Diego hotel that was to be used in

Setai Group, LLC vs. 5th Avenue Partners, et al

1    California.

2        Secondly, Your Honor, the Plaintiff's counsel intimated

3    that there was some issue as to where it was published.  There

4    is no evidence in the record that these press releases were

5    issued anywhere but in San Diego.  And that is clear from the

6    Plaintiff's own complaint and to the exhibits attached to the

7    Plaintiff's complaint.

8        Thirdly, Your Honor, the representation by Plaintiff's

9    counsel that they are shocked that they would have to go to

10   California is less than truly forthcoming because they signed a

11   contractual forum selection clause knowing that they were

12   contracting to go to California, and it should not come as any

13   surprise now that the proper venue for this action is

14   California and that dismissal for improper venue should be

15   granted in this case.

16       THE COURT:  Thank you, Ms. Escobar.  All right.

17       I appreciate the well-drafted pleadings and briefs and

18   arguments that have been submitted on the two pending motions

19   this morning, the Defendants' motion to dismiss the complaint,

20   docket entry three and docket entry 37; motion to dismiss the

21   amended complaint and the responses thereto by the parties to

22   the Plaintiffs.

23       The Court is persuaded that there are sufficient minimum

24   contacts established in the well-pled allegations of the

25   complaint and the amended complaint to satisfy the long arm

Setai Group, LLC vs. 5th Avenue Partners, et al

EXHIBIT A PAGE 44

1    statute of Florida.  And that's Florida Statute Section 48.193,

2    specifically subsection 1, subsection small B, and subsection

3    G.

4        The allegations, which are yet to be proven of course, and

5    the Court does not know the parties should draw any inferences

6    from this that the Court has made any decisions regarding the

7    underlying factual assertions of the well-pled complaint and

8    amended complaint.  But, they certainly are sufficient to show

9    that there were tortious acts that were allegedly committed

10   that would subject the Defendants, 5th Avenue, and the public

11   relations group Tara to the jurisdiction of this Court.

12       Venue is proper here, and the motions therefore to

13   transfer the matter to the Southern District of California

14   where the apparently later-filed complaint between the parties

15   is pending and asserted -- well, I'm not sure of that.  I saw

16   something here yesterday that dealt with that.  But in any

17   event, whether it is pending or not, there is -- let me accept

18   that you argued here that it's pending in California and I

19   accept that.

20       But nevertheless, the motion to transfer to California is

21   denied, the Court finds it has jurisdiction, personal

22   jurisdiction of the parties and the venue is proper.

23       We'll ask Mr. Russomanno to draft a short order to that

24   effect, and we'll move on to the -- we'll require answers by

25   the parties, answers by the parties within 15 days to the

Setai Group, LLC vs. 5th Avenue Partners, et al

EXHIBIT A PAGE 45

1    complaint, and we will schedule a preliminary injunctive

2    hearing to move on to the consideration of the factual

3    assertions and issues that both sides make regarding the

4    propriety of the entry of the preliminary injunction regarding

5    the alleged trademark infringement.

6        The matters that Mr. Malcolm and Ms. Escobar raised here

7    today regarding factual assertions about where some of these

8    events took place and so on, all parties are at liberty to

9    assert those, raise those, discuss those and we will take a

10   good, careful look at them at the conclusion of the preliminary

11   injunction hearing.  We'll see where they are.  If it turns out

12   that none of this activity occurred here, well then this matter

13   may be reasserted at the conclusion of the preliminary

14   injunction hearing.

15       Now the only question we have, we have 15 days for the

16   Defendants to respond by answer or otherwise plead -- by

17   answer, excuse me, but I was thinking of any counterclaims or

18   anything of that sort.  But that pleading should be filed

19   within 15 days.

20       Now, the Court would like to move on to prompt preliminary

21   injunction hearing.  Presumably the Plaintiffs, having

22   requested an emergency consideration of this matter and the

23   matter having pended now, I might add languished, I don't know

24   why I did not get to it more promptly, but I guess we've had

25   some -- well, whatever.  In any event, it fell off the

1  scheduling radar range of my staff and myself and for that I

2  apologize.  But we can get to it as promptly as you want to.  I

3  presume the Plaintiffs are anxious to move forward.  They filed

4  motions to that effect.

5      I'll ask Mr. Malcolm, Ms. Escobar and/or Mr. Coffey, how

6  much time you would require or you would like or require,

7  assuming that you answer in 15 days, when could the Defendants

8  be ready for preliminary injunction hearing, reasonably ready.

9      MR. MALCOLM:  Your Honor, reasonably ready, I think in 45

10  days.

11      THE COURT:  Oh, that's fine.  That's good.  Does the

12  Plaintiff have any difficulty with that given the fact we've

13  got 15 days to respond?

14      MR. RUSSOMANNO:  Your Honor, that's fine.

15      THE COURT:  All right.  Fine.  We'll schedule it for

16  preliminary injunction hearing approximately 45 days hence.

17      Yes, Mr. Malcolm.

18      MR. MALCOLM:  Your Honor, may I inquire, you take oral

19  testimony for preliminary injunction?

20      THE COURT:  Oh, yes.  We have a full preliminary

21  injunction hearing, it's a trial.  This matter, frankly as you

22  might expect or knowing as I do the lawyers involved, and

23  forgive me Mr. Malcolm, what I'm saying is, I know Mr. Coffey,

24  I know Mr. Russomanno, their reputations here and so on, that

25  we've got experienced lawyers.  And I'm assuming the same thing

1    is true with you, Mr. Malcolm.

2        MR. MALCOLM:  Thank you, Your Honor.

3        THE COURT:  I'm not eliminating you from Mr. Coffey's

4    fine reputation or Mr. Russomanno, or Ms. Escobar.

5        All I'm saying is, I was looking at you all and saying

6    okay, I've got good lawyers, experienced lawyers and your

7    answer to me certainly indicated that, you can be ready in 45

8    days, that's fine, that's good.  That's what I like to hear and

9    that's what I like to see, that we can move these on.

10       I was assuming that you would understand and know that

11   just in the real world, the resolution of a preliminary

12   injunction hearing is a very significant step in the case, if

13   not dispositive, in some or many instances.  So I mean, we all

14   know that that's the effect of the resolution at preliminary

15   injunction, therefore, I always have sufficient time allocated

16   and everything else that yes, you will have, I'm presuming and

17   indeed hoping, we will have sworn testimony on these matters.

18       Now, some of these issues hopefully will not be in great

19   dispute.  For example, the Plaintiffs have set forth in a

20   footnote to one of their pleadings or somewhere that they have

21   a validly registered trademark.  Well, if that's a serious

22   issue, fine.  But I'm hopeful that some of those issues can be

23   resolved even by either by agreement between counsel beforehand

24   or if not, at least we would know going into the hearing that,

25   you know.

1    But those that appear to be those types of issues, I think

2  they will not -- be will not need to spend a great deal of time

3  on it, but certainly which group solicited what group, where

4  the parties were where these things happened, what happened,

5  what contract was or was not entered in to, what the letter of

6  intent, effect of it is or is not, those are all matters -- oh

7  now, well, I'm getting off too far.

8    I don't really expect a lot of people to come in and tell

9  me Judge, in my opinion, you know, where it says Setai West,

10 that really meant Saigon because it's far enough west.  In

11 other words, I want to be careful about opinion type testimony,

12 and I don't know that you all need any experts to tell me what

13 the contracts mean.  I mean, don't bring lawyers here to tell

14 me their opinions as to the phrases in a contract.  I don't

15 expect either side to do that.  I rely on you all to tell me

16 what the phrases in the contract mean.  The experts are

17 standing before me right now.  We don't need the law professor

18 to tell me that Setai West means Saigon or means Tucson or San

19 Diego or whatever.  I mean, you all can argue all that to me.

20    So I'm not real keen on -- I don't know that we need any

21 particular experts. But you know, what happened about this

22 contract, that's what the preliminary injunction is all about.

23    So I'm presuming you may need a day, two days, three, if

24 you -- I will ask both sides to give me, after they discuss it,

25 some sort of an estimate on what they think the time is

**Setai Group, LLC vs. 5th Avenue Partners, et al**

1   required and whatever you need you'll have.  This may be good

2   news or may be bad news to you, but basically I can hear the

3   matter any time you want to hear it.  Serious litigation in the

4   Southern District dropped off so much that we got time to burn

5   around here, at least I think we do.  Some of my newer

6   colleagues don't agree with me on that, but then that's the

7   difference of opinion on the bench, nothing to do with you all.

8       Basically you can have what time you need and we can have

9   it in 45 to 60 days easily.  She's handed me a note here

10  telling me that I'm probably getting over committed.  Oh.  All

11  right.  Let's see, this is April.  Ms. Williams tells me, my

12  courtroom deputy, that May 19th looks good is what she just

13  said.  It's the second week of my May 12th trial period.  We're

14  playing the averages a little bit.  I have a two week trial

15  period, but lately I've been -- just been with -- criminal

16  matters have been settling and what have you.  But May 19th

17  looks good, so we'll take a look at this when we get back in

18  the office.  But basically May 19th is -- Mr. Russomanno?

19  You're standing.

20      MR. RUSSOMANNO:  Your Honor, if I could just mention,

21  first I want to thank the Court for the scheduling.  Mr. Burton

22  indicated that on May 19th his son graduates from college, Your

23  Honor.  Mr. Burton's son on May the 19th.  I do know that

24  there's a few days earlier, like that Thursday or Friday in

25  May, our calendar --

1    THE COURT:  Is May 19th a Friday?  We don't want to start
2    this case on a Friday.
3    COURTROOM DEPUTY:  No, Judge.  That's on a Monday.
4    THE COURT:  It's a Monday.  May 19th is a Monday?  And
5    would you be back -- would Mr. Burton be back, Mr. Russomanno,
6    when we start on the 20th, 21st?
7    MR. BURTON:  My problem is it's at NYU and the
8    commencement --
9    THE COURT:  I'm sorry.  I can't hear you without a
10    microphone.
11    MR.  BURTON:  I'm sorry, sir.  May I approach?
12    THE COURT:  Use one of the microphones.
13    MR. BURTON:  The commencement is Tuesday, and I believe
14    Wednesday in New York City.  He's graduating from NYU and he's
15    with honors.  So it's a two day procedure.  And I realize if we
16    start Monday and continue, I'll be unable to participate.
17    Those are the only two days in my life that I really have to be
18    someplace.
19    THE COURT:  No, I have no difficulty with making it
20    comfortable for all sides.  Ms. Escobar?
21    MS. ESCOBAR:  Your Honor, lead counsel in our case, Edward
22    Mullins, is actually travelling in from California today.  We
23    would not be able to commit to any specific dates at this time
24    without clearing with him and of course --
25    THE COURT:  Ms. Escobar, it may come to a huge shock to

Setai Group, LLC vs. 5th Avenue Partners, et al

1   you, but you really don't have to commit to anything.  I'm just

2   being nice here to ask you your schedules and I will try to

3   work with you.  But I'm not -- this isn't, you know, brokerage

4   things where I say oh, well here and there, and I'm not getting

5   into all that.

6       We're going to try the matter approximately 45 to 60 days

7   hence.  If somebody has a personal reason, like a son or

8   daughter graduating from school, or if you have -- somebody has

9   a personal illness or long-standing doctor or something, I try

10  to accommodate it.  But I'm not waiting to let somebody flying

11  in from New York or somewhere or California.  Tell me if it's

12  okay with him if I schedule something.

13      So do you have any problems, Mr. Malcolm, with something

14  like -- well, Thursday, that would only leave us two.  But of

15  course the end of that second week I'm all jammed up.

16      You were talking about the first three days, Joyce?  What

17  do we have Thursday and Friday of that week?

18      COURTROOM DEPUTY:  On Thursday you only have two hearings

19  and on Friday you don't have anything.

20      THE COURT:  All right.  How about Thursday and Friday,

21  Mr. Malcolm, from your point?

22      MR. MALCOLM:  Your Honor, my suggestion is that may be

23  fine, but I suggest, I think all counsel can work together and

24  confer and in conjunction with your clerk, recognizing that

25  you're pointing to a 45 day --

1    THE COURT:  45 to 60, doesn't matter.

2    MR. MALCOLM:  That way we can get back to you on a date.

3    THE COURT:  Just tell me, we know that right now we're

4    talking about Thursday and Friday, which would be what Joyce?

5    COURTROOM DEPUTY:  That would be the 22nd and 23rd?

6    THE COURT:  We're looking at the 22nd and 23rd, two days

7    there for the preliminary injunction hearing.  If when you get

8    back to your offices by the end of work today, you tell me that

9    somebody has got a conflict with those two days, fine.  Other

10   than that, I'll just work -- I'll take care of it.

11   MR. MALCOLM:  Your Honor, there's an outside chance, I

12   haven't really thought this through, that the hearing could

13   exceed two days, but I understand --

14   THE COURT:  That's fine, that's fine.  Is the following

15   week though, I'm commencing my two week trial calendar and

16   depending on -- is that correct?

17   COURTROOM DEPUTY:  Yes, we'll be in Key West the following

18   week.

19   THE COURT:  We're in Key West the following week.  They

20   wouldn't mind coming down there to finish up also.

21   Let me know if you have -- all right.  What would be your

22   best guesstimate of time to try Mr. Malcolm?

23   MR. MALCOLM:  Your Honor, I think to be on the

24   conservative side, my estimate would be not to exceed three

25   days.

1    THE COURT:  Okay.  That's fair enough.

2    Mr. Russomanno, do you believe three days would be

3    adequate to take care of the case?  By the way, you're not

4    locked -- this is not -- if you tell me three days and it takes

5    four days, so be it.  You tell me three and it takes two, so be

6    it.  You're not under any ridiculous -- locked in this schedule

7    by a judge that's going to hammer you if you guessed wrong.

8    I'm asking for your best guess.

9    MR. RUSSOMANNO:  Your Honor, I would agree that especially

10   if we get together and we can agree to many items that we don't

11   have to spend time with the court, that we could agree to, I

12   would, think at the minimum two, the most would be four.  It

13   may just fall right in to three days, Judge, but I believe that

14   would be a proper assessment.

15   THE COURT:  All right then.  That Thursday and Friday

16   would not be good for you because the following two weeks is

17   the schedule that I do every six weeks approximately.

18   MR. RUSSOMANNO:  Would Your Honor -- the week of the 12th

19   --

20   THE COURT:  I've locked into that, so that's that.

21   MR. RUSSOMANNO:  Your Honor, I don't know if week of the

22   12th, that may be 43 days but --

23   THE COURT:  Gentlemen we're wasting time here.

24   MR. RUSSOMANNO:  We'll get back to you.

25   THE COURT:  I mean, I will bear in mind that you would

Setai Group, LLC vs. 5th Avenue Partners, et al

1   like approximately three days, I will set it on a time frame

2   that gives you three days.  If you need it fine, if you don't

3   need it fine, that's all right too.  I don't want you to feel

4   -- well, you've given me your best estimate.

5        Now, and I will have to work this out.  I can't give you a

6   special appointment, I will set it up and work it out and let

7   you know.  It looks like it will not be the week of the 19th

8   and so obviously it will then be somewhere around 60 days to 70

9   or in that time frame, 60 to 80.  We'll set it in that time

10  frame.

11       Thank you very much.

12       COURTROOM DEPUTY:  All rise, court is in recess.

13       (PROCEEDINGS CONCLUDED)
                    *  *  *  *  *

14

15                    C E R T I F I C A T E
    I certify that the foregoing is a correct transcript from the
16  record of proceedings in the above-entitled matter.

17

18

19  __4/1/08__                    _Dawn M. Whitmarsh_____

20  Date                          DAWN M. WHITMARSH, RPR

21

22

23

24

25

Setai Group, LLC vs. 5th Avenue Partners, et al