# EXHIBIT 9

October 22, 2007

**VIA FACSIMILE AND U.S. MAIL**

Richard J. Burton, Esq.
The Burton Firm
2999 N.E. 191 Street
Suite 805
Miami, Florida 33180

Re: Setai Joint Venture

Dear Mr. Burton:

My firm is counsel to Steve Rebeil and Tom Benjamin in connection with a joint venture to develop and operate Setai luxury hotels across the Western United States and elsewhere, as specified in a May 23, 2007, agreement (the "Joint Venture Agreement") signed by both our clients and by The Setai Group, LLC ("Setai"). Your letter of October 18, 2007, has been referred to me for a response.

At the outset, I feel compelled to note that your letter makes a number of disturbingly improper assertions. For example, your letter goes on for the better part of two pages repeating allegations against Mr. Rebeil that, for the most part, appear to have been lifted off of a libelous website established by someone with an obvious axe to grind. You then: (i) suggest that the matters listed in your letter were unknown to Setai and that, if they had been known, Setai would not have gone forward with the Joint Venture Agreement; and (ii) imply that, if Messrs. Rebeil and Benjamin do not accede to the business demands contained in your letter, Setai will publish these libelous statements to others. No useful purpose would be served by offering a point-by-point response here. Accordingly, we will content ourselves with making three brief points.

➢ First, precious little of what you assert is true.

➢ Second, all of these allegations were known to Setai long before it entered into the Joint Venture Agreement, both from Setai's own investigation and because Mr. Rebeil made precisely the full disclosure you claim was lacking.

➢ Third, publication of false statements is, of course, an intentional tort; for that matter, even the mere threat to publish embodied in your letter is a tort. (*See Flatley v. Mauro* (2006) 39 Cal.4th 299.)

Elsewhere, your letter misreads the Joint Venture Agreement as somehow lapsing if referenced further agreements were not negotiated and executed by August 23, 2007. But, this simply is not true. The plain intent behind the provision you reference was not to provide for a 90-day temporary joint venture. Instead, it was to provide a time period for the parties to negotiate further agreements *that, when executed, would supplant the terms in the already-executed Joint Venture Agreement.* That Setai has yet to sign the

further agreements does not mean that the joint venture has lapsed. Rather, it means that, in the absence of such agreements, the terms of the Joint Venture Agreement still control. Further, we feel compelled to note that any delay in the execution of such agreements is attributable to Setai, and not to our clients.

Finally, your letter questions the propriety of certain press releases and of a website concerning the San Diego project, and suggests that they were unauthorized and unknown; however, neither of these things is true, either. Indeed, and to the contrary, all of these actions were taken with Setai's knowledge, acquiescence and, in some cases, affirmative input.

Which brings me to the larger point of this letter. As you must know, our clients have invested well over $135 million in the San Diego project, whose opening has been delayed precisely to ensure that it meets Setai's brand standards. And, more to the point, approximately $30 million of that amount is directly attributable to the Joint Venture Agreement, and was incurred to meet standards established and directed by Setai pursuant to the Joint Venture Agreement. To suggest, after Setai has had our clients delay opening the San Diego project and spend approximately $30 million in reliance on the Joint Venture Agreement (much of it at Setai's express direction), that our clients should join Setai in a media statement terminating the venture is ill-conceived, to say the least.

Our clients have honored every aspect of the Joint Venture Agreement, both in spirit and to the letter. In reliance upon Setai honoring its obligations as well, our clients have delayed opening of the San Diego project and have invested tens of millions of dollars more in that project. We expect Setai to honor its obligations, too. And, as a partner, we expect Setai to do so professionally, and without heavy-handed letters or threats.

Apparently, there are present business differences that require discussion. We repeat, however, that threats, innuendo and heavy-handed demands are not a well-calibrated means to resolve those differences. Before this promising venture gets too far off course, I would suggest that the principals meet once more, either with or without counsel, to clear the air and discuss business solutions.

Finally, please do not respond with another threatening letter than libels Mr. Rebeil, misconstrues the Joint Venture Agreement, and/or ignores important facts known to Setai. Also, please do not make the mistake of misreading the polite and professional tone of this letter for anything other than what it is — namely, an expression of our desire and preference that businessmen work out business solutions. Our clients are fully aware of their legal rights and fully prepared to assert them should it ever be necessary to do so.

LA 127015007v1 10/22/2007

EXHIBIT 9 PAGE 35

I look forward to a more measured and thoughtful response from you.

Very truly yours,

Scott D. Bertzyk

cc:    Client

LA 127015007v1 10/22/2007

EXHIBIT 9    PAGE 36